NOT RECOMMENDED FOR PUBLICATION

No. 22-4081

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 26, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| BEVINS BRANCH RESOURCES, INC.; KENTUCKY EMPLOYERS' MUTUAL INSURANCE, <br><br> Petitioners, <br><br> v. <br><br> DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; TOBEY DALE COLLINS, Deceased; THELMA E. RHINESMITH, <br><br> Respondents. | ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW BOARD |

O R D E R

Before: SUTTON, Chief Judge; WHITE and THAPAR, Circuit Judges.

Bevins Branch Resources, Inc. (Bevins Branch) and Kentucky Employers' Mutual Insurance petition the court to review an order of the Benefits Review Board affirming the decision of an administrative law judge (ALJ) awarding benefits to Tobey Dale Collins, who is now deceased,[1] under the Black Lung Benefits Act. The parties have waived oral argument, and the panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a). Because the Board applied the correct legal standard and substantial evidence supports the ALJ's factual findings, we deny the petition for review.

---

[1] Collins died in May 2022, after the ALJ's decision and before the Board's decision. Respondent Thelma E. Rhinesmith is Collins's surviving spouse.

Factual Background

Collins was born in 1958. He started working as an aboveground coal miner in 1976 or 1977 and worked primarily as a dozer operator for 10-12 hours a day, five or six days a week. The parties stipulated that Collins's coal-mining employment lasted 15.25 years. Collins left the coal mining industry in 2003 due to a back injury.

Collins began smoking cigarettes at the age of either 19 or 22. He gave varying accounts of his cigarette consumption and when he quit smoking, but the ALJ found that he smoked up to one pack of cigarettes per day for most of his 33 years as a smoker and that, sometime after August 2018, he cut down to one-half pack or less of cigarettes per day. Collins's breathing problems, including shortness of breath, began in approximately 1989.

In 1995, Collins applied unsuccessfully for black lung benefits. He applied again in 2018, and the U.S. Department of Labor (DOL) denied the claim. Collins then requested and received an evidentiary hearing on his claim before the ALJ.

Total Disability Claims Under the Black Lungs Benefits Act

To prove entitlement to black lung benefits, the miner must show by a preponderance of the evidence that he has pneumoconiosis (also known as black lung disease),[2] that his pneumoconiosis arose out of his coal mining employment, that he is totally disabled by a

---

[2] Pneumoconiosis is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a). Under this regulation, "pneumoconiosis" includes "both medical, or 'clinical', pneumoconiosis and statutory, or 'legal', pneumoconiosis." *Id.* We have explained "Clinical pneumoconiosis" and "legal pneumoconiosis" as follows:

> "Clinical pneumoconiosis" refers to certain lung diseases that the medical community recognizes to be caused by exposure to coal dust—in the words of the applicable regulation, diseases "characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). "Legal pneumoconiosis" is a broader and less definite term that refers to any chronic lung disease that was caused *in this instance* by exposure to coal dust. 20 C.F.R. § 718.201(a)(2).

*Cent. Ohio Coal Co. v. Dir., OWCP*, 762 F.3d 483, 486 (6th Cir. 2014).

respiratory condition, and that pneumoconiosis contributed at least in part to his disability.  *See Brandywine Explosives & Supply v. Dir., OWCP*, 790 F.3d 657, 661-62 (6th Cir. 2015).  But if a coal miner "was employed for fifteen years or more in one or more underground coal mines," or a "substantially similar" mine, and he "demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis."  30 U.S.C. § 921(c)(4); *see also* 20 C.F.R. § 718.305(b)(1) (implementing the presumption of total disability due to pneumoconiosis in the applicable regulations).  Total disability, in turn, exists when the "pulmonary or respiratory impairment . . . standing alone, prevents or prevented the miner . . . [f]rom performing his or her usual coal mine work[] and . . . engaging in [comparable] gainful employment in the immediate area of his or her residence."  20 C.F.R. § 718.204(b).  To rebut the presumption, the employer must establish either that the miner had neither clinical nor legal pneumoconiosis or "that no part" of the miner's disability "was caused by pneumoconiosis."  20 C.F.R. § 718.305(d)(1); *see* 30 U.S.C. § 921(c)(4).

The ALJ's Decision

The ALJ awarded benefits, finding that Collins had a totally disabling respiratory or pulmonary impairment; that, with 15.25 years of coal-mining employment, he was entitled to the "fifteen-year" statutory presumption that he was totally disabled due to pneumoconiosis; and that Bevins Branch did not rebut this presumption.  In reaching these findings, the ALJ considered, among other evidence and as is pertinent here, four medical opinions—one each from Dr. Ayesha Sikder, Collins's pulmonary specialist; Dr. John Randolph Forehand, the DOL's expert; and Dr. Gregory Fino and Dr. Peter Tuteur, experts for Bevins Branch.  Dr. Sikder, after conducting a pulmonary function test (PFT) on May 23, 2019, diagnosed Collins with "severe combined restrictive and obstructive airway diseases" and chronic obstructive pulmonary disease (COPD); reiterated those diagnoses after reexamining Collins on February 12, 2020; and clarified that Collins has "moderate to severe COPD" after conducting another PFT on May 27, 2020.  Dr. Forehand, after a PFT performed on August 31, 2018, diagnosed Collins with "mixed restrictive-obstructive lung disease" and concluded that he was not totally disabled.  Dr. Fino, after examining

and performing a PFT on Collins on December 10, 2019, diagnosed him as having a "[n]ormal pulmonary" function and concluded that he was neither partially nor totally disabled. Finally, Dr. Tuteur, after examining and performing a PFT on Collins on January 7, 2020, found no evidence of pneumoconiosis and concluded that he was neither impaired nor disabled.

The ALJ determined that Dr. Sikder's findings, which were based on Collins's "relevant histories, respiratory symptoms, physical findings, and pulmonary function testing," were reliable and more probative than the other medical evidence and that "[t]hose findings when considered with the very heavy labor required of [Collins's] usual coal mine job supports a finding of total disability." That finding, coupled with the parties' stipulation that Collins has established 15.25 years of coal mine employment, entitled Collins to the presumption that he is totally disabled due to pneumoconiosis arising out of his coal mine employment.

In determining that Bevins Branch failed to rebut the presumption, the ALJ, as is relevant here, first found that "neither Dr. Fino nor Dr. Tuteur was able to present a well-reasoned and documented opinion that affirmatively disproves the existence of legal pneumoconiosis" and thus they failed to "adequately explain why [Collins's] totally disabling respiratory or pulmonary condition did not arise at least 'in part' from coal dust exposure during his lengthy 15.25 years of coal mine employment." The ALJ also fund that Bevins Branch did not disprove the existence of clinical pneumoconiosis (i.e., pneumoconiosis that was caused by Collins's years of exposure to coal dust) because although the chest x-ray evidence—by itself—disproved its presence, the evidence as a whole, which included the chest x-ray evidence, CT scan evidence, and medical treatment notes and opinions, did not disprove its presence. Finally, the ALJ found that Bevins Branch did not show that pneumoconiosis played "no part" in Collins's total disability, reasoning that Dr. Fino's and Dr. Tuteur's causation opinions carried "little probative weight" because the experts did not adequately explain the basis for their opinions. The ALJ therefore concluded that Collins had established that his pneumoconiosis arose out of coal mine employment and awarded him black lung benefits.

The Board's Decision and the Present Petition

The Board affirmed, agreeing with the ALJ's determination that Collins was entitled to the presumption that he is totally disabled and that Bevins Branch did not rebut the presumption. It rejected Bevins Branch's argument that the ALJ did not adequately explain his credibility findings and erred in relying almost exclusively on Dr. Sikder's notes when concluding that Collins is totally disabled. Although Dr. Sikder did not expressly find that Collins is "totally disabled," the Board explained that use of that phrase is not required and that Dr. Sikder's detailed treatment notes—which were more probative and credible than the other doctors' notes—were sufficient to allow the ALJ to draw the conclusion that Collins is totally disabled and thus entitled to the statutory presumption. The Board also agreed with the ALJ that Bevins Branch did not rebut the presumption because it failed to show that Collins did not have either clinical or legal pneumoconiosis and did not argue that "no part" of Collins's respiratory disability was due to pneumoconiosis.

Bevins Branch (and its insurer) now petition for review, arguing that the ALJ erred in finding that Dr. Sikder's records establish that Collins is totally disabled and thus entitled to the statutory presumption of total disability and that it did not rebut the presumption.

Standard of Review

"In black-lung-benefits cases, we review the Board's legal conclusions de novo and review the ALJ's decision (rather than the Board's) to determine whether the decision was supported by substantial evidence." *Huscoal, Inc. v. OWCP, United States DOL*, 48 F.4th 480, 489 (6th Cir. 2022) (quoting *Cent. Ohio Coal*, 762 F.3d at 488). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Cent. Ohio Coal*, 762 F.3d at 488). "In determining whether the substantial-evidence standard is met, we must consider 'whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence' over other evidence in the record." *Id.* (quoting *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 634 (6th Cir. 2009)). "When the challenge relates to the weighing of conflicting medical evidence," as it does here, "our scope of review is

exceedingly narrow." *Dixie Fuel Co., LLC v. Dir., OWCP*, 820 F.3d 833, 842 (6th Cir. 2016) (cleaned up). "We do not reweigh the evidence or substitute our judgment for that of the ALJ," and we therefore "will uphold the ALJ's decision where it rests within the realm of rationality." *Id.* (cleaned up).

   *Total Disability*

   First, Branch Bevins argues that the ALJ erred in crediting Dr. Sikder's medical opinions and discounting the other three doctors' opinions when concluding that Collins is totally disabled. "Miners can prove their total disability in two general ways": through objective evidence, such as a PFT, or through "a physician's medical opinion that their impairment has rendered them totally disabled within the meaning of the regulatory definition." *Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 459 (6th Cir. 2022) (citing 20 C.F.R. § 718.204(b)(2)). Regarding the latter means, physicians "must exercise 'reasonable medical judgment' and base their opinions on 'medically acceptable clinical and laboratory dialogistic techniques.'" *Id.* (quoting 20 C.F.R. § 718.204(b)(2)(vi)). "[E]vidence supporting a miner's total disability must be weighed against any 'contrary probative evidence.'" *Id.* (quoting 20 C.F.R. § 718.204(b)(2)).

   Branch Bevins first argues that Dr. Sikder's opinions were flawed because they were based on unreliable PFTs. In support, Bevins Branch refers to Dr. Fino's opinion that the PFTs conducted by Dr. Sikder on May 23, 2019, and May 20, 2020, were invalid largely because Collins "never exhaled maximally." As Bevins Branch acknowledges, the ALJ concluded that the PFTs were insufficient by themselves to show a total disability. But the ALJ did find that the PFTs were nonetheless "adequate," notwithstanding "Dr. Fino's broad, conclusory challenges" to them, stating in particular that Dr. Fino neglected to "elaborate on the Appendix B," which "contain[s] the quality standards for administering and interpreting" PFTs, or on "other criteria or [to] incorporate specifics of that criteria into his discussion of either of these PFTs to support the challenges he made." The ALJ also found unavailing Dr. Fino's challenge to the PFTs on the ground that Collins "never exhaled maximally," reasoning that "the effort put forth need not necessarily be 'maximal'" for a PFT to be in "'substantial compliance' with the quality standards,"

*see* 20 C.F.R. § 718.101(b); rather, "fair effort may be acceptable" if it is "adequate for the physician to base a credible conclusion." And here, the technician reported that "good" effort was given for each PFT. In addition, the ALJ explained that the requisite "tracings" were provided for each of the PFTs performed by Dr. Sikder, *see* 20 C.F.R. § 718.103(b); that Dr. Sikder had also measured Collins's lung volumes and diffusing capacity; and that Dr. Sikder provided interpretive comments for each PFT, including her interpretation of Collins's "severe obstructive & restrictive airway disease" diagnosis following the May 23, 2019, PFT and of his "moderate to severe COPD" diagnosis following the May 27, 2020, PFT. The ALJ thus concluded that both PFTs performed by Dr. Sikder were adequate and that the results were "sufficiently reliable for treatment purposes." We cannot second-guess this evidence-based conclusion. *See Dixie*, 820 F.3d at 842.

Next, Bevins Branch argues that the ALJ impermissibly drew upon unreasonable inferences when finding a total disability. It claims that Dr. Sikder's notes "are wholly silent on the issue of total disability from a pulmonary standpoint" insofar as "[t]hey address diagnoses but not impairment or disability" and that the ALJ erroneously credited them and discredited other objective evidence. As an initial matter, we reject Bevins Branch's suggestion that a physician must explicitly state that a claimant is "totally disabled" for him to be deemed such for purposes of entitlement to black lung benefits. "A medical opinion need not be phrased in terms of 'total disability' before total disability can be established. Instead, it is sufficient to list the impairment which prohibits the claimant from performing his usual coal mine work." *Patridge v. Dir., OWCP*, No. 88-3965, 1989 WL 72922, at *3 (6th Cir. July 5, 1989) (per curiam) (citing *Black Diamond Coal Mining Co. v. Benefits Review Bd.*, 758 F.2d 1532, 1534 (11th Cir. 1985)).

We recently clarified that the medical opinion must be "'adequate' for *a reasonable person* to conclude . . . that [the] doctor [who made medical findings from which total disability can be inferred] accurately understood the exertional requirements of [the miner's] job." *Samons*, 25 F.3d at 468 (emphasis added) (quoting *Greene*, 575 F.3d at 633). In other words, it is sufficient for a reasonable person—an ALJ—to infer, based on a physician's opinion that was formed using reasoned medical judgment and was based on medically acceptable techniques, that the miner's

respiratory or pulmonary condition prevented him from performing his usual coal mine work and from obtaining employment that requires skills comparable to those used in his previous coal mine work. 20 C.F.R. § 718.204(b)(2)(iv); *see Samons*, 25 F.4th at 459. So here, the fact that Dr. Sikder never explicitly stated that Collins was "totally disabled" is not dispositive. Her report and notes stated that she examined Collins three times; that Collins has a "sig[nificant] history of coal dust exposure"; that she performed a chest x-ray, a chest CT scan, and two PFTs; that she diagnosed Collins with "severe combined restrictive and obstructive airway diseases with reduced lung volumes and diffusion[,] which is non-reversible" and "very severe COPD," which is "[m]ost likely from the [occupational] exposures"; and that Collins's conditions required pulmonary medications. All of this allowed the ALJ to rationally conclude that Collins "would be unable to perform the very heavy level of work required of his usual coal mine job." This is sufficient to render Collins "totally disabled" under the relevant regulation. *See* 20 C.F.R. § 718.204(b); *see also Manning Coal Corp. v. Wright*, 257 F. App'x 836, 842 (6th Cir. 2007) (explaining that, "in determining whether total disability has been established, an ALJ must consider all relevant evidence on the issue of disability including *medical opinions which* are phrased in terms of total disability or *provide a medical assessment of physical abilities or exertional limitations which lead to that conclusion*" (emphases added) (quoting *Midland Coal Co. v. Dir., OWCP*, 358 F.3d 486, 493 (7th Cir. 2004))).

Bevins Branch argues that Dr. Sikder's reports were not documented and not reasoned and thus did not comply with the applicable regulations, *see* 20 C.F.R. § 718.204(b)(2)(iv). Dr. Sikder's reports and notes were lacking, Bevins Branch claims, because they "were not supported by the pulmonary function and blood gas study evidence" and instead were based solely on her "three office visit notes." But as explained above, substantial evidence supports the ALJ's finding that the PFTs performed by Dr. Sikder were valid and reliable; the validity of the PFTs eliminated the need for a blood gas study. *See* 20 C.F.R. § 718.204(b)(2). And the ALJ explained that Dr. Sikder's report regarding Collins's May 31, 2019, examination and Dr. Sikder's "treatment notes" sufficiently detailed her findings, including "chronic dyspnea, chronic non-productive cough, and

episodic wheezing"; her interpretation of the PFTs; her "pulmonary medical decision making"; and her determination that Collins's "respiratory or pulmonary condition . . . required the prescription of pulmonary medications." The ALJ found this report and these notes "sufficiently reliable to establish [that Collins] suffered from a totally disabling respiratory or pulmonary condition contrary to the opinions of Drs. Fino and Tuteur." Indeed, as the ALJ explained, not only were Dr. Fino's findings on the PFTs outweighed by Dr. Sikder's, as set forth above, but Dr. Fino neglected to comment on Dr. Sikder's May 31, 2019, through May 27, 2020, treatment notes and, among other flaws, did not explain why Collins's 15.25 years as a coal miner would not have contributed to Collins's reduced diffusing capacity, as he concluded.

As for Dr. Tuteur, he, again among other flaws, neglected to review Dr. Sikder's reports, which included a diagnosis of COPD, and did not explain why, in light of his finding that there was no deficit in Collins's pulmonary function, Collins needed prescription pulmonary medications. And Dr. Forehand's finding that Collins did not have a totally disabling respiratory or pulmonary impairment as of August 31, 2018, when he examined Collins, held little weight because "at some point" after October 2018, Collins's "respiratory or pulmonary condition deteriorated significantly," which prompted his primary care physician to refer him to Dr. Sikder for a pulmonary consultation.

Bevins Branch now asks us to overlook these flaws in the findings of Drs. Fino, Tuteur, and Forehand and to credit their findings over those of Dr. Sikder's, which would require us to "reweigh the evidence or substitute our judgment for that of the ALJ"—something we cannot do. *Dixie*, 820 F.3d at 842. On this record, we conclude that the ALJ rationally credited Dr. Sikder's findings, which were based principally on the PFTs she performed, her treatment notes, and her report, with more probative value than the other physicians' findings. *See Huscoal*, 48 F.4th at 493 (noting that "the ALJ was left to reconcile three conflicting medical opinions" and "permissibly concluded that Dr. Sikder's opinion . . was 'the most credible evidence in the record'" because the other two physicians' opinions "contained more substantial flaws" (quoting *Wolf Creek Collieries v. Dir., OWCP*, 298 F.3d 511, 522-23 (6th Cir. 2002)).

In so weighing the findings, and in reaching its total-disability conclusion, the ALJ did not impermissibly draw unreasonable inferences, as Branch Benefits maintains. An ALJ may draw "reasonable inference[s] that lie[] within his 'broad discretion in evaluating the medical evidence.'" *Grundy Mining Co. v. Flynn*, 353 F.3d 467, 484 (6th Cir. 2003). "To infer disability, the ALJ must first determine the nature of the claimant's usual coal mine work and then compare evidence of the exertional requirements of the work with medical opinions as to the claimant's work capability." *Poole v. Freeman United Coal Mining Co.*, 897 F.2d 888, 894 (7th Cir. 1990).

Here, the ALJ explained the requirements of Collins's coal mine work as a dozer operator—e.g., that his days lasted 10-12 hours and required regular physical movement, including the lifting of equipment weighing 100-200 pounds—and then thoroughly detailed what each of the four doctors did: i.e., examine Collins, perform tests, interpret the tests, and render his or her opinions as to his respiratory and pulmonary condition. Then, the ALJ concluded that "it can reasonably be inferred based on [Dr. Sikder's] findings, prescription of pulmonary medications, and interpretation of [Collins's] PFTs"—which, as set forth above and contrary to Bevins Branch's insistence, were reasonably determined to be valid—"that [Collins] would be unable to perform the very heavy level of work required of his usual coal mine job." In doing so, the ALJ did not entirely discount the other three doctors' findings: for example, Dr. Forehand and Dr. Fino agreed that Collins's work required "very heavy" labor—a finding that the ALJ relied upon when rendering its conclusion. But, as explained in more detail above, the ALJ ultimately found Dr. Sikder's medical-opinion evidence "more probative" than the other medical evidence. Although "the evidence of record," including the findings of the other three doctors, "may permit an alternative conclusion," we must "defer to the ALJ's authority in the finding of facts." *Wolf Creek Collieries*, 298 F.3d at 523; *see also Grundy*, 353 F.3d at 484 ("[A] reviewing court may not set aside an inference because it finds another more reasonable." (cleaned up)); *Wright*, 257 F. App'x at 842-43 (concluding that, although a physician's opinion that the miner suffers from a moderately severe pulmonary impairment was "not a model opinion, . . . the ALJ could have inferred from it

that [the miner] is totally disabled in light of his 'moderately severe pulmonary impairment and his job, which the ALJ characterized as requiring 'heavy work.'").

In short, substantial evidence supports the ALJ's conclusion that Collins was entitled to the statutory presumption of total disability due to pneumoconiosis that arose out of coal mine employment.

*Rebuttable Presumption*

Bevins Branch argues that the ALJ erred in finding that it did not rebut the statutory presumption by showing that Collins did not have legal pneumoconiosis.[3] To satisfy its rebuttal burden, Bevins Branch was required to show that "coal-dust exposure had no more than a *de minimis* impact on [Collins's] lung impairment." *Island Creek Coal Co. v. Young*, 947 F.3d 399, 407 (6th Cir. 2020). Bevins Branch argues that the opinions of Dr. Fino and Dr. Tuteur—who "opined that [Collins] does not have any chronic coal mine dust-related disease, and that coal mine dust exposure did not contribute to [his] respiratory impairment"—were sufficient to meet that burden and were more "well-reasoned" than that of Dr. Sikder, who, according to Bevins Branch, "did not provide any explanation for her diagnosis of COPD, and did not discuss what effect, if any, [Collins's] smoking had on his respiratory impairment." But as set forth above, the ALJ weighed the conflicting medical evidence and appropriately determined that Dr. Sikder's opinions were the most persuasive. Indeed, the ALJ concluded, after a thorough analysis, that Dr. Fino's opinion that there is no evidence of legal pneumoconiosis and Dr. Tuteur's opinion that there is no clear evidence of COPD were not well-reasoned, not well-documented, and entitled to little weight because they were based on their limited review of the evidence. Specifically for Dr. Tuteur, the ALJ explained that his opinion ignored Dr. Sikder's reports and assessment of COPD and contradicted the other doctors' findings about the prevalence of Collins's cough.

---

[3] Bevins Branch does not challenge the Board's conclusions that (1) the ALJ's finding that it did not disprove clinical pneumoconiosis precluded a rebuttal finding that Collins does not have legal pneumoconiosis and (2) it did not establish that "no part" of Collins's respiratory condition is due to pneumoconiosis because it did not dispute that finding in its petition for review to the Board.

In short, the ALJ's decision to give more weight to Dr. Sikder than to Bevins Branch's experts on the issue of legal pneumoconiosis was supported by substantial evidence. It follows that substantial evidence supports the ALJ's finding that Bevins Branch failed to rebut the presumption of legal pneumoconiosis. *See Brandywine*, 790 F.3d at 666-68 (concluding that substantial evidence supported the ALJ's finding that the employer failed to rebut the presumption of legal pneumoconiosis, which the ALJ found after crediting one doctor's opinions and discrediting the opinions of two other doctors—one whose opinions "contained a number of leaps of logic" and the other whose opinions relied on limited evidence and an unsupported conclusion that coal-mine dust did not cause the claimant's COPD).

Finding no error in the decision to award benefits, we **DENY** the petition for review.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk